Southern Newspapers, Incorporated v. Commissioner.
Southern Newspapers, Inc. v. Commissioner
Docket No. 24432.
United States Tax Court
1952 Tax Ct. Memo LEXIS 291; 11 T.C.M. (CCH) 230; T.C.M. (RIA) 52070; March 14, 1952
Charles H. Burton, Esq., for the petitioner. Frank C. Allen, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: This proceeding involves a deficiency of $1,111.50 in excess profits tax for 1945. The issue is whether the respondent erred in disallowing $1,300 of the amount petitioner deducted as salary of its president. Petitioner's excess profits tax return for 1945 was filed with the collector of internal revenue for the district of Arkansas. Findings of Fact Petitioner, an Arkansas corporation engaged in the business of publishing several newspapers in Arkansas, kept its books and filed its returns on an accrual basis of accounting. In 1939 the board of directors of petitioner fixed the salary of its president, C. E. Palmer, at $3,900 *292 per annum and did not at any time thereafter decrease the amount. Palmer waived payment of $50 per week of his salary in 1941 and $25 per week in 1942 on account of the financial condition of petitioner. He did not waive payment of any part of his authorized salary of $3,900 for 1943. Petitioner paid to its president in 1943, $2,600 of his authorized salary of $3,900 for that year and accrued the remainder of $1,300 on its books. In its return for 1943, signed by C. E. Palmer as president, petitioner claimed as deductions $2,600 for salary paid to its president and $1,300 for "Unpaid salary 1943 - C. E. Palmer". Respondent disallowed the deduction taken for $1,300 pursuant to the provisions of section 24(c) of the Code. Petitioner paid the additional tax resulting from the adjustment. Petitioner's president considered that his salary for 1943 was $3,900, and that petitioner was indebted to him in the amount of $1,300 for unpaid salary for 1943. He and other of petitioner's directors and stockholders were of the opinion that petitioner could not pay its liability for the unpaid salary without violating provisions of the Stabilization Act of 1942. Petitioner did not during 1943 file *293 an application with any Federal authority for permission to increase the salary of its president. C. E. Palmer has at all times important filed his income tax returns on the cash basis. In its income and declared value excess profits tax return for 1945, signed by C. E. Palmer as president, petitioner claimed on line 16 the amount of $11,245.45 as "Compensation of officers". The amount included $6,500 as compensation of its president. The salary of $6,500 was paid to Palmer in 1945. In addition thereto it claimed on line 26 of the return the amount of $1,300 as salary due its president for the year 1943. In his determination of the deficiency respondent held that inasmuch as petitioner filed its returns on an accrual basis and had accrued the amount of $1,300 on its books in 1943, the amount was not deductible from gross income in 1945. Opinion Petitioner contends that the amount of $1,300 in controversy did not accrue in 1943 and that its obligation to pay the amount did not arise until 1945, the taxable year. Specifically, it says that the Stabilization Act of 1942 prohibited payment in 1943 of more than the amount of $2,600 which was actually paid in the year 1942; that because *294 of that prohibition nothing in excess of $2,600 was paid; and that being expressly prohibited by law from incurring the expense of $1,300, the amount was not accruable in 1943 as a legal obligation of petitioner. The parties agree that petitioner kept its books and filed its returns on an accrual method of accounting, and petitioner makes no contention that it was not required by statute to take the deduction in 1943 if liability for the unpaid salary accrued in that year. Petitioner's president testified that during 1943 he was of the opinion that regulations promulgated under the Stablization [Stabilization] Act of 1942 prohibited payment to him in that year of an amount in excess of the total payments of $2,600 in 1942, in view of which there was no need for him to elect to waive payment, as he had in 1941 and 1942, of any part of his authorized salary of $3,900. He also testified that other of petitioner's directors and stockholders shared his view of the matter. The duly authorized salary of Palmer was at all times important $3,900 per annum. He waived payment of a portion of the salary in 1941 and 1942 on account of the financial condition of petitioner. Palmer's voluntary *295 forgiveness of part of his compensation prior to 1943 did not operate to reduce the amount thereof as fixed by petitioner's board of directors, and petitioner does not expressly contend otherwise. That Palmer's understanding coincided with that view is shown by the fact that he merely waived payment of part of the full salary in 1941 and 1942, as distinguished from consenting to a reduction of the amount of his salary, and having signed the returns for 1943 and 1945, in which specific mention was made of the unpaid amount, he must be charged with knowledge that petitioner had concluded that it was liable to him for salary earned in 1943 but not paid. Moreover, he testified that he regarded petitioner as indebted to him for the $1,300. So construing what occurred in 1943, he understood that his authorized salary in that year was $3,900 and not, therefore, limited to the amount of $2,600 that was actually paid to him in 1942. As already pointed out, Palmer's salary in and prior to 1943 was $3,900 per annum and the officer's election to waive payment of part of it in 1941 and 1942 did not operate to reduce the amount thereof. Payment of all of the salary authorized before the Stabilization *296 Act of 1942 became law would not, therefore, have been an increase of compensation; rather it would have been no more than satisfaction of a legal obligation. Petitioner cites no regulation promulgated under the Stabilization Act of 1942, the terms of which limit payment of salary in 1943 to the portion thereof actually paid in the prior year, and we find none. Thus, there was no basis for a conclusion, as Palmer testified he reached, that payment of the $1,300 in dispute would have violated salary regulations. Petitioner argues that its obligation to pay the $1,300 and a right to accrue the amount did not arise until 1945, when legal restrictions against salary increases under the stabilization regulations were lifted. It alleges that following the changes of the regulations in August, 1945, a decision was made to pay Palmer the total amount of $6,500 in that year, including $1,300 for services performed in 1943. Another contention, made in the alternative, is that if the $1,300 is not deductible in 1945 as back salary for 1943, it is deductible as reasonable compensation of Palmer for 1945 and, accordingly, the full amount of $6,500 actually paid to him in 1945 is a proper deduction *297 in that year, and respondent erroneously disallowed $1,300 of the amount. The contentions are based on a misunderstanding of the facts. Petitioner's return reported adjusted net income of $26,629.84. Deductions included $6,500 as compensation of Palmer on line 16 and a separate deduction on line 26 of $1,300 for "C. E. Palmer (1943)," a total of $7,800. Proof was made that the salary of $6,500 for 1945 was paid in that year but no contention is made and the evidence does not establish that the $1,300 in controversy was paid in the taxable year. No adjustments were made to net income as reported other than disallowance of the deduction in the amount of $1,300 for the reasons stated in our findings of fact. Thus, it is clear that the deduction of $6,500 was allowed in full and only the unpaid portion of the 1943 salary of $3,900 was disallowed. There is no issue before us that any amount in excess of $6,500 constitutes reasonable compensation in 1945 and no proof was made that salary in excess thereof for services in that year was authorized. No grounds exist for allowing the $1,300 as a deduction for salary of Palmer in 1945. We find that the amount of $1,300 in controversy was *298 not accruable in the taxable year and, therefore, no error was committed by respondent in disallowing the deduction. Decision will be entered for the respondent.